

**SIGNED this 16th day of April, 2015**

_____
Shelley D. Rucker
UNITED STATES BANKRUPTCY JUDGE

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TENNESSEE
WINCHESTER DIVISION

In re:                                                                                    No. 13-15606
                                                                                          Chapter 7

STEVEN ERICH HUBBARD,


       Debtor;


STEVEN ERICH HUBBARD,

       Plaintiff

v
                                                                                          Adversary Proceeding
                                                                                          No. 14-1010


UNITED STATES DEPARTMENT
OF EDUCATION,

       Defendant.

1

*Appearances for United States Department of Education*

    M. Kent Anderson
    1110 Market Street, Suite 515
    Chattanooga, TN 37402-0615

*Appearances for the Debtor*

    Steven Erich Hubbard, *Pro Se*
    219 Walker Street
    McMinnville, TN 37110

## MEMORANDUM

The debtor Steven Erich Hubbard ("Debtor" or "Plaintiff") filed a complaint in this adversary proceeding against defendant Pennsylvania Higher Education Assistance Agency ("PHEAA"). [Doc. No. 1, Complaint].[1] He sought the dischargeability of certain student loans pursuant to 11 U.S.C. § 523(a)(8). He further sought declaratory relief from this court pursuant to 11 U.S.C. § 105(a) that certain student loans pose an "undue hardship" upon him.

PHEAA filed a motion to dismiss the Debtor's Complaint claiming that it was not the guarantor or owner of the loans, but was merely the servicer of the debt. [Doc. Nos. 5, 6]. The Debtor opposed the motion. [Doc. No. 8]. The court granted PHEAA's motion and provided the Plaintiff with forty-five days to amend the Complaint to add the United States Department of Education ("Defendant" or "DOE") as a defendant. [Doc. No. 10].

The Plaintiff amended his Complaint on June 30, 2015 to add the DOE as a defendant. [Doc. No. 16, Amended Complaint]. Now the Defendant has filed a motion for summary judgment. [Doc. No. 37]. The Debtor opposes the motion. [Doc. No. 40].

The court has reviewed the motion, the briefing of the parties, the record, and the applicable law and now makes the following findings of fact and conclusions of law in

---

[1] All docket entry reference numbers refer to docket entries for Adversary Proceeding No. 14-1010, unless otherwise noted.

2

accordance with Fed. R. Bankr. P. 7052. For the reasons explained *infra*, the court determines that the Defendant's motion for summary judgment will be GRANTED without prejudice to the Plaintiff refiling another adversary proceeding should his circumstances change.

### I.  Background

The Debtor filed his Chapter 7 voluntary bankruptcy petition on November 4, 2013. [Bankr. Case No. 13-15605, Doc. No. 1]. Plaintiff's Amended Complaint asserts that the National Student Loan Data System ("NSLDS") indicates that he owes several student loans to the DOE in the total amount of $14,016.00 in principal and $213 in interest. Amended Complaint, ¶ 11. The Plaintiff acquired these loans while attending various educational institutions, including Wayne State University in Michigan, in pursuit of a bachelor's degree in accounting. *Id.* at ¶ 12; [Doc. No. 38-1, Deposition of Steven Erich Hubbard ("Hubbard Dep."), p. 2]. He listed Wayne State University on his Schedule F as a creditor holding an unsecured nonpriority claim in the amount of $3,159.12. [Bankr. Case No. 13-15606, Doc. No. 1, p. 22]. He also listed the Pennsylvania Higher Education Assistance Agency ("PHEAA") as the servicer for a DOE loan in the amount of $9,384.14 in his Schedule F. *Id.*

The Debtor's Amended Complaint contends that payment of such student loans constitutes an undue hardship pursuant to 11 U.S.C. § 523(a)(8). In the Amended Complaint the Debtor describes his financial difficulties, including the financial commitments he has made to help support his permanently disabled mother. Complaint, ¶¶ 13-17. He asserts that he lives with his mother and brother in a two-bedroom house and receives aid for food from the federal Supplemental Nutrition Assistance Program. *Id.* at ¶¶ 13, 15. His schedules reflect that he owns no property but pays $750 in rent expenses. His schedules do not reflect the identity of his landlord. Schedule G is blank. The Debtor contends that, as shown on Schedules I and J of his

bankruptcy schedules, his income of $19,530 is below the federal poverty level for a family of three. *Id.* at 14.

The Debtor asserts that his mother "suffers from permanent and life-altering disabilities." Amended Complaint, ¶ 16. He states that she suffers from emotional and physical pain and requires "routine medical, laboratory, and radiological examination . . . by licensed physicians on a constant basis to ensure the stability of her medical conditions." *Id.* at ¶ 17. The Plaintiff asserts that he must spend large amounts of money to help pay for his mother's procedures and that those expenditures are expected to continue until a cure is found for her maladies or she passes away. *Id.* at ¶ 18.

In support of its motion for summary judgment, the DOE has attached excerpts from the Plaintiff's deposition. *See* Hubbard Dep. The Debtor admits that he is "about 30 credits shy" of receiving a final bachelor's degree. *Id.* at pp. 5-6. He only needs one class to complete his associate's degree. *Id.* at p. 6. The Debtor is employed, and his mother, who is 53, is applying for social security disability benefits. *Id.* at pp. 6, 9. His mother receives some form of health insurance through BlueCross BlueShield. *Id.* at p. 14. The actual amount the Debtor spent supporting his mother was $1500 to $2000 a year. *Id.* at p. 16

In addition, his nineteen year-old brother is looking for work, although the Debtor claimed him as a dependent on his tax return. *Id.* at p. 6. He did not claim his mother as a dependent on his tax return. *Id.* at p. 7. The Debtor reported that his wages and salaries, as reported on his 2013 tax return, were $14,893. *Id.* He further indicated that he expected to earn more for taxable year 2014, up to $17,000 or $18,000, because he would be paid overtime. *Id.* at p. 8. His student loans were in deferment as of the time of his deposition, and he has not made a payment on the loans. *Id.* at pp. 8-9.

4

The Debtor admitted in his deposition that he is attempting to find a job with higher wages and has applied for a promotion at his current workplace. Hubbard Dep., p. 11. His pay would increase to $10 per hour with a maximum possibility of $16 per hour. The Debtor had no reason to believe that his mother might not receive disability benefits in the future and that his brother might find employment. Hubbard Dep., p. 12. If the Debtor returns to school, then his deferment on the student loan repayments will continue. *Id.* at p. 13. The Debtor also noted that he could be eligible for a program known as "Pay as You Earn" that would allow him to reduce his student loan payments to an affordable payment that could be made based on his income. *Id.*

The Debtor is also in good health and can work full-time. Hubbard Dep., p. 14. He was twenty-five years old at the time of his deposition. *Id.* In describing why his student loans, which are currently in deferment, will pose an undue hardship for him, the Debtor stated:

> . . . the interest keeps growing on the loans every day. What I'm thinking is I can actually probably pay the principal. But depending on how long it takes me to get a higher paying job, if you look at the repayment summary, if I go on the Pay As You Earn Plan and say even if I stay at my same income or I go to like maybe 20 to 25 percent higher, what's going to happen is the interest is going to grow at such a high rate that at the end of the period there's a maximum amount of time until it's forgiven. I think it's reduced to 20 years. The government itself will forgive, . . . about $26,000.
>
> So it would make me an undue hardship because let's say I make the same amount of money 15 years from now – well, hopefully not – the interest will grow at such a rate that I won't be able to pay it back under the current situation I'm in. So it's not the principal. It would be the interest and it accumulates, you know, at a daily factor.

Hubbard Dep., p.17.

In his opposition to the DOE's motion for summary judgment the Plaintiff asserts that he has enrolled in the Public Service Loan Forgiveness Program ("PSLFP") in which an eligible student may participate by entering full-time public service and making 120 payments on his student loan debt. He contends that this is an example of his good faith efforts to repay his

student loan debt. In support of this position, the Debtor notes that he:

> has taken upon the initiative to incorporate a non-profit corporation in the State of Tennessee called the Tennessee Community Development Corporation ("TCDC"). Furthermore, Plaintiff has filed for 501(c)(3) public-charity status with the Internal Revenue Service ("IRS"). Thereby, Plaintiff has reduced his principal balance and interest by over a fifteen year period due to his enrollment in the PSLFP and hopefully provide a better-income for himself and provide a public good and/or service to his local community.

[Doc. No. 40, Plaintiff's Response in Opposition to Defendant's U.S. Department of Education's Motion for Summary Judgment, pp. 7-8]. The Plaintiff provided the court with a copy of his IRS tax transcript for the year 2014 which indicated gross wages of $19,569.00 and that the Plaintiff claimed his brother as a dependent. [Doc. No. 40, pp. 12-15]. The Plaintiff has also attached a copy of a document located on the U.S. Department of Health & Human Services website located at www.hhs.gov entitled "2015 Poverty Guidelines." The document indicates that the poverty guideline for a family of three is $20,090.

The Plaintiff further provided a copy of a document entitled, "Charter Nonprofit Corporation" issued by the Secretary of State for the State of Tennessee and the Division of Business Services. [Doc. No. 40, p. 23]. The Charter indicates that the Plaintiff is the incorporator of a non-profit entity named "Tennessee Community Development Corporation" that is to be a public benefit corporation and not a religious corporation for purposes of Section 501(c)(3) of the Internal Revenue Code. *Id.* The Debtor also included a copy of a 2014 IRS Form 1023-EZ entitled the "Streamlined Application for Recognition of Exemption Under Section 501(c)(3) of the Internal Revenue Code." [Doc. No. 40, pp. 25-27]. The Plaintiff signed the application as its Executive Director and checked a box indicating that the organization "normally receive[s] at least one-third of [its] support from public sources or [it] normally receives at least 10 percent of [its] support from public sources and [it has] other characteristics

of a publicly supported organization." *Id.* at p. 26. The Debtor did not provide any information in the record regarding the nature of the non-profit organization he has founded, such as its purpose, how it obtains funding, and his role in the organization.

## II.    Jurisdiction

28 U.S.C. §§ 157 and 1334, as well as the general order of reference entered in this district, provide this court with jurisdiction to hear and decide this adversary proceeding. The Plaintiffs' action regarding the dischargeability of particular debts is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(I).

## III.    Standard of Review

Federal Rule of Bankruptcy Procedure 7056 makes Federal Rule of Civil Procedure 56 applicable to bankruptcy adversary proceedings. *See* Fed. R. Bank. P. 7056. Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The burden is on the moving party to show conclusively that no genuine issue of material fact exists, and the Court must view the facts and all inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Morris v. Crete Carrier Corp.*, 105 F.3d 279, 280-81 (6th Cir. 1997); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987); *Kava v. Peters*, No. 09-2327, 2011 WL 6091350, at *3 (6th Cir. Dec. 7, 2011).

Once the moving party presents evidence sufficient to support a motion under Fed. R. Civ. P. 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. The nonmoving party is required to come forward with some significant probative evidence which makes it necessary to resolve the factual dispute at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317,

322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *60 Ivy Street*, 822 F.2d at 1435. The moving party is entitled to summary judgment if the nonmoving party fails to make a sufficient showing on an essential element of the nonmoving party's case with respect to which the nonmoving party has the burden of proof. *Celotex*, 477 U.S. at 323; *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

### IV.    Analysis

11 U.S.C. § 523(a)(8) provides that student loans may only be discharged if repayment "would impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. § 523(a)(8). The Bankruptcy Code does not define the term "undue hardship." Many Circuit Courts, including the Sixth Circuit, have chosen to adopt the three-prong standard to analyze "undue hardship" established by the Second Circuit in *Brunner v. New York State Higher Educ. Serv. Corp.*, 831 F.2d 395, 396 (2d Cir. 1987). The three prongs a debtor must demonstrate under the *Brunner* test are:

> (1) that the debtor cannot maintain, based on current income and expenses a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Id.* The debtor bears the burden of demonstrating that repayment of the student loans will impose an undue hardship by a preponderance of the evidence. *Barrett v. Educ. Credit Mgmt. Corp. (in re Barrett)*, 487 F.3d 353, 358 (6th Cir. 2007). The failure to prove any one of the factors requires a determination that the repayment does not impose an undue burden. *Kennedy v. Access Group Loan Serv. (In re Kennedy)*, No. 10-3048, 2011 WL 87242, at *3 (Bankr. E.D. Tenn. Jan. 11, 2011).

In *Oyler v. Educational Credit Management Corp. (In re Oyler)*, the Sixth Circuit

8

expressly adopted the *Brunner* analysis, noting, "[g]iven then, that the *Brunner* construct subsumes the criteria we have treated as distinct and independent, and that the *Brunner* formulation easily accommodates factors we look to in evaluating undue hardship, we opt to join other circuits in adopting the simpler rubric of the *Brunner* test." 397 F.3d 382, 385 (6th Cir. 2005). Other factors that the Court determined were already subsumed into the three broad prongs of the *Brunner* test included:

> (1) the debt amount; (2) the interest rate; (3) the debtor's claimed expenses and current standard of living to evaluate whether the debtor has attempted to minimize expenses; (4) the debtor's income, earning ability, health, education, dependents, age, wealth, and professional degrees; and (5) whether the debtor has attempted to maximize income by seeking or obtaining employment commensurate with her education and abilities.

*In re Oyler*, 397 F.3d at 385. The Debtor's reliance on *In re Miller* for the proposition that the Sixth Circuit has not expressly adopted the *In re Brunner* test is misplaced. *Miller v. Pennsylvania Higher Education Assistance Agency (In re Miller)*, 377 F.3d 616 (6th Cir. 2004). *In re Oyler* post-dates *In re Miller* and includes the express adoption of the *Brunner* test. 397 F.3d at 385.

With respect to the second prong of the *Brunner* test, the Sixth Circuit found in *In re Oyler* that the "circumstances must be indicative of a 'certainty of hopelessness, not merely a present inability to fulfill financial commitment.'" 397 F.3d at 386 (quoting *In re Roberson*, 999 F.2d 1132, 1136 (7th Cir. 1993)). Such hopelessness may include, "illness, disability, a lack of useable job skills, or the existence of a large number of dependents." *Id.* In addition and "most importantly," "they must be beyond the debtor's control, not borne of free choice." *Id.* "Choosing a low-paying job cannot merit undue hardship relief." *Id.*

In *Oyler* the Sixth Circuit relied on *Storey v. National Enterprise Sys. (In re Storey)*, for the concept that a "debtor must do everything in his power to improve his financial situation."

9

397 F.3d at 386 (citing *In re Storey*, 312 B.R. 867, 872 (Bankr. N.D. Ohio 2004)). In *In re Storey* the bankruptcy court reviewed the *Brunner* test and determined:

> The center of gravity of the second prong of the *Brunner* test is permanency or, what can be termed, an involuntary inability to improve one's financial circumstances. Stemming from this principle, this Court has consistently espoused the maxim, now cited to favorably by the District Court, that, (1) a debtor's distressed state of financial affairs must be the result of events which are clearly out of their control, and (2) the debtor must have done everything within their power to improve their financial situation. Although not a *sine quo non*, an often used explanation, and a common paradigm for an "undue hardship" case, is the existence of a permanent disability, whether physical and/or mental.

312 B.R. at 872. A court must examine not only the debtor's present income, but also consider "what the debtor's income stream will be in the foreseeable future." *Id.* The bankruptcy court in *In re Storey* acknowledged that "such an analysis necessarily involves a degree of speculation," however, "a debtor is expected to use their best efforts to maximize their income within their vocational profiles." *Id.* at 873. *See also Kraft v. New York Higher Educ. Servs. Corp. (In re Kraft)*, 161 B.R. 82 (Bankr. W.D.N.Y. 1993) (denying request for discharge of student loans where debtor had failed to demonstrate significant length of time without better job prospects, noting that "[t]his is not a case of a Debtor with a long job history of minimum wage employment after successfully completing her curriculum and who has demonstrated no prospects for future improvements despite substantial efforts").

The court concludes that it does not need to undertake analysis of all three of the *Brunner* factors because there is no genuine issue of material fact regarding the Plaintiff's inability to demonstrate a level of "hopelessness" necessary to meet the second prong of the *Brunner* test. *See In re Oyler*, 397 F.3d at 386. The second prong of the test requires a debtor to demonstrate "that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans." *Brunner*, 831 F.2d at 396. A

10

failure to create a genuine issue of material fact regarding any one of the prongs requires a court to find that no undue hardship exists. *See In re Kennedy*, 2011 WL 87242, at *3.

The court sympathizes with the Debtor's situation, but does not find that "illness, disability, a lack of useable job skills, or the existence of a large number of dependents" is at issue in this case. *Oyler*, 397 F.3d at 386. The Debtor has admitted that he is not physically disabled or otherwise unsuited to work full-time. Hubbard Dep., pp. 11, 14. The Debtor was twenty-five years old at the time of his deposition. *Id.* at p. 14. He is only a few credits shy of an associates' degree, and he could obtain a bachelor's degree with two more full-time semesters. *Id.* at pp. 5-6. Based on the pleadings filed in the case, the Debtor has excellent communication skills, writes well, and is highly motivated and capable of acquiring knowledge on his own. The court sees no evidence that he lacks useable job skills. He may greatly increase his earning potential. As to dependents, he claims that his mother is a dependent, but he cites no legal authority requiring him to identify his mother as his dependent. She already has insurance that limits the Debtor's exposure for medical bills. Should she obtain social security disability income, she would have her own income. In fact, the undisputed facts demonstrate that he does not currently claim his mother as a dependent on his tax return. [Doc. No. 40, pp. 12-15]. Similarly, his brother will not need to be a dependent of his for much longer. The Debtor's brother is over nineteen years old and is looking for full-time work. *Id.* at p. 6.

The Debtor has also admitted that he has applied for a promotion at his job with the potential to make significantly more income than he is currently making. *Id.* at p. 11. He has no reason to believe that he will not be earning more in the future than he is earning now, and he hopes to earn more in the future. *Id.* at p. 12. This is not the level of hopelessness contemplated by Section 523(a)(8). *In re Oyler*, 397 F.3d at 386. There is no dispute of fact that the Debtor has

11

several possible options that may lead to an increased income in the future. He can defer his student loans while he finishes obtaining a degree. He has also admitted to the possibility of various promotions at his current place of employment. *Id.* at p. 11. These are simply not the circumstances intended to demonstrate undue hardship under 523(a)(8). The court must consider the Debtor's potential future income stream. *See In re Storey*, 312 B.R. at 812. The court must also consider the overall policy behind Section 523(a)(8); Congress has determined that student loans should only be discharged in the most dire of circumstances, such as the presence of a physical or mental disability or advanced age making the possibility of gainful employment very slim. The Debtor is thankfully not in such dire straits. Were the court to conclude that these undisputed circumstances could create an undue hardship, the court would be setting a precedent severely out-of-alignment with current Sixth Circuit authority. Should the Debtor's circumstances change significantly for the worse, he can ask this court to revisit its Section 523(a)(8) determination.

## V.   Conclusion

The court finds that there is no genuine issue of fact as to whether the payment of these loans will produce an undue hardship on the Debtor. As noted *supra*, the court concludes that it will GRANT the Defendant's motion for summary judgment.

A separate order will enter.

# # #